IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TETHYS BIOSCIENCE, INC., | No. C 09-5115 CW |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE (Docket No. 22) |
| v. | |
| MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C. and IVOR R. ELRIFI, | |
| Defendants. | |

Defendants Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (Mintz Levin) and Ivor R. Elrifi move to dismiss Plaintiff Tethys Bioscience, Inc.'s First Amended Complaint (1AC) in its entirety and to strike Plaintiff's request for punitive damages. Plaintiff opposes the motions. The motions were taken under submission on the papers. Having considered the papers submitted by the parties, the Court GRANTS in part Defendants' Motion to Dismiss and DENIES it in part. Defendants' Motion to Strike is DENIED.

BACKGROUND

Plaintiff, a Delaware corporation with a primary place of business in Emeryville, California, is a biotechnology company. Defendant Mintz Levin is a law firm incorporated under the laws of Massachusetts. Defendant Elrifi is the co-chair of Mintz Levin's intellectual property practice. Plaintiff does not allege specific conduct by Elrifi. However, its averments refer to Mintz Levin and Elrifi collectively.

Plaintiff engaged Defendants to prosecute domestic and international patent applications for a method that purportedly identifies biological markers that indicate whether a person is likely to develop diabetes. Defendants are also prosecuting patent applications on behalf of American Type Culture Company (ATCC). ATCC seeks protection of a method that putatively identifies the probability that a person will develop diabetes, which Plaintiff maintains is similar to its method and constitutes "competing intellectual property." 1AC ¶ 32(c). Defendants did not inform Plaintiff that they were concurrently prosecuting ATCC's applications.

Plaintiff claims that Defendants disclosed its confidential intellectual property to ATCC. Plaintiff asserts that it "carefully protected the confidentiality of the scientific and technical features of [its technology] and its future research plans to preserve and maximize its research lead relative to much larger and well-funded companies, and to minimize the prior art impact of its initial inventions on later-filed improvement inventions." 1AC ¶ 14. To this end, Plaintiff avers that it did not give permission to Defendants to divulge information regarding

2

its technology

> to any person or agency except (a) to the United States Patent and Trademark Office, and associated local counsel in connection with filing patent applications for Tethys, (b) to the World Intellectual Property Organization in connection with an international application for Tethys under the Patent Cooperation Treaty and (c) via mandatory publication of Tethys patent applications when required by law, or expressly pre-approved by Tethys.

1AC ¶ 8.

Plaintiff contends that similarities in language used in its patent applications and in those of ATCC demonstrate that improper disclosure occurred. For instance, Defendants filed Plaintiff's provisional patent application with the United States Patent and Trademark Office (PTO) on October 11, 2005; they filed ATCC's application on September 1, 2006. Both applications contain nearly identical language under the "Diagnostics and Prognostic Methods" section. Compare 1AC, Ex. A 9:9-18:5 with 1AC, Ex. B 9:22-17:18. Plaintiff asserts that other sections of ATCC's application are also materially similar to its own. Based on the shared language, Plaintiff maintains that Defendants must have improperly disclosed its proprietary information because, at that time, ATCC could not have obtained the material from another source.

Likewise, Plaintiff asserts that improper disclosure occurred with regard to its international patent application under the Patent Cooperation Treaty (PCT). Defendants filed Plaintiff's PCT application with the World Intellectual Property Organization (WIPO) on October 11, 2006; they represented to Plaintiff that the application would be published in the public domain between April and October, 2007. On March 28, 2007, Defendants filed ATCC's PCT application with the WIPO. Like those in the United States patent

3

applications, the "Diagnostic and Prognostic Methods" sections of Plaintiff's and ATCC's PCT applications are nearly identical, compare 1AC, Ex. C 23:4-41:5 with 1AC, Ex. D 17:8-36:28, although there is slightly less overlap than in the domestic patent applications.  And, as with its domestic application, Plaintiff maintains that ATCC could not have obtained the language from any other source.  Plaintiff also suggests that the invention claimed in ATCC's PCT application could not have been based on the work that ATCC asserts it undertook.  Plaintiff asserts that ATCC had "zero relevant original experimental evidence" and that the only basis for its invention "is the copied Tethys Technology."  1AC ¶ 25.  Finally, Plaintiff asserts that, by causing "a significant portion of the Tethys Technology to be published in a PCT application on behalf of ATCC before filing US and PCT applications for Tethys on April 18, 2008," Defendants created "prima facia prior art against Tethys improvement inventions that limit the scope of claims thereon."  1AC ¶ 23.

Plaintiff discovered ATCC's PCT application in May, 2008 and terminated its relationship with Defendants on May 29, 2008.

Plaintiff asserts claims against Defendants for breach of fiduciary duties and conversion.  Plaintiff maintains that Defendants caused damage in excess of $75,000 by, among other things, failing to compensate it for the use of its intellectual property; causing a reduction in the value of its intellectual property; placing it in a "lesser economic position of an inventor faced with competing intellectual property," 1AC ¶ 32(c); requiring it to expend resources to protect its intellectual property and to hire new counsel.  Plaintiff seeks punitive damages, asserting that

4

Defendants committed fraud and engaged in oppression.

On December 9, 2009, the Court granted Defendants' first motion to dismiss, concluding that many of Plaintiff's allegations concerning its damages were impermissibly vague and that Defendants could not "convert" a patent application. Plaintiff filed its 1AC on January 15, 2010, and Defendants brought the current motion on February 12.

## DISCUSSION

I.   Dismissal under Rule 12(b)(1)

Defendants argue that Plaintiff's claims must be dismissed under Rule 12(b)(1) because they are not ripe for review. In particular, Defendants assert that, because the PTO has not ruled on the patent applications of Plaintiff or ATCC, Plaintiff's injuries are speculative.

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). When, as here, a defendant attacks a plaintiff's complaint on its face, allegations must be taken as true and all inferences must be drawn in the plaintiff's favor. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). Because ripeness pertains to a federal court's subject matter jurisdiction, it is properly raised in a Rule 12(b)(1) motion to dismiss. Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010) (citations omitted).

A "'claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Bova v. City of Medford, 564 F.3d 1093, 1095 (9th Cir. 2009) (quoting Texas v. United States, 523

5

U.S. 296, 300 (1998)).

Plaintiff pleads that it has suffered various forms of damage, including a decrease in the value of its technology and business, arising from Defendants' alleged disclosure of its confidential information. Because these allegations must be taken as true, Plaintiff's action is ripe for review.[1] Plaintiff alleges and may be able to prove that it sustained current and certain injury. That Plaintiff's harm could be enhanced or mitigated by the PTO's decision does not render its claims unripe. Although Defendants may disagree on whether damage has actually occurred, this does not render Plaintiff's claims non-justiciable.

Defendants cite <u>Jennings v. Auto Meter Products</u>, in which the Seventh Circuit affirmed the dismissal of a plaintiff's state law claims on ripeness grounds because the PTO had not ruled on his patent application. 495 F.3d 466, 477 (7th Cir. 2007). There, the plaintiff had alleged that the defendants fraudulently misled the patent examiner into believing that he was not the inventor of the claimed invention. <u>Id.</u> at 469. Because the plaintiff's patent application had not been ruled on, the court found his damages "entirely speculative." <u>Id.</u> at 476. The court opined that, if Jennings ultimately received a patent, "any potential damages he claims to have suffered from the inability to get a patent disappear." <u>Id.</u>

<u>Jennings</u> is distinguishable because Plaintiff does not base its damage solely on whether it receives a patent. As noted above,

---

[1] Defendants make several arguments based on the patent applications attached to Plaintiff's amended complaint. However, as discussed in further detail below, these assertions do not show that Plaintiff's claim is impermissibly speculative.

6

it has plead forms of existing damage that do not turn on the PTO's decision. If Plaintiff seeks to recover damages based on any pending PTO action, it may move to stay this action in the interim. However, as plead, Plaintiff's amended complaint presents a sufficiently defined controversy that is justiciable.

Plaintiff's claims are ripe for review. Accordingly, Defendants' motion to dismiss under Rule 12(b)(1) is denied.

## II. Dismissal under Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

### A.  Claim for Breach of Fiduciary Duty

To maintain a claim for a breach of fiduciary duty, a plaintiff must allege: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086

7

(1995). The "relation between attorney and client is a fiduciary relation of the very highest character." Am. Airlines v. Sheppard, Mullin, Richter & Hampton, 96 Cal. App. 4th 1017, 1044 (2002) (citation omitted).

Plaintiff alleges that Defendants breached their fiduciary duty by prosecuting ATCC's patent applications, which it maintains constituted the representation of an adverse interest, and by disclosing its confidences. Defendants argue that Plaintiff fails to plead a cognizable breach of any fiduciary duty and damage.

       1.   Conduct Constituting Breach of Fiduciary Duty

Although they do not create an independent right of action, the Rules of Professional Conduct of the State Bar of California, "together with statutes and general principles relating to other fiduciary relationships, 'help define the duty component of the fiduciary duty which an attorney owes to his client.'" Id. at 1032 (citing Mirabito v. Liccardo, 4 Cal. App. 4th 41, 45 (1992)). Duties of loyalty and confidentiality inhere in the fiduciary relationship between an attorney and a client. See Flatt v. Superior Court, 9 Cal. 4th 275, 288-89 (1994) (discussing duty of loyalty); Cal. Bus. & Prof. Code § 6068(e)(1) (providing duty of confidentiality for attorneys).

Plaintiff alleges that Defendants violated their duty of loyalty by representing the adverse interests of ATCC. In particular, Plaintiff cites California Rule of Professional Conduct 3-310(C), which provides that attorneys shall not, without the informed written consent of each client:

> (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

8

> (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or
>
> (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

The United States Patent and Trademark Office Code of Professional Responsibility contains a similar prohibition, which bars the representation of adverse parties unless "it is obvious that the practitioner can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the practitioner's independent professional judgment on behalf of each." 37 C.F.R. § 10.66(a), (c).

Defendants do not dispute that they did not disclose to Plaintiff their representation of ATCC or seek consent. Instead, they assert that their representation of ATCC cannot be considered adverse because the inventions of Plaintiff and ATCC are "fundamentally different." Mot. at 7. The Court declines to make such a determination on the limited record before it. It is not evident from the differences identified by Defendants that their representation of ATCC did not create even a potential conflict with Plaintiff's interests, for which disclosure and consent was required. If all inferences are drawn in Plaintiff's favor, it has plead a breach of a duty of loyalty.

Plaintiff also plead that Defendants violated their duty of confidentiality by, among other things, disclosing information on its provisional patent application to ATCC. Plaintiff's claim appears to rest primarily on Defendants' alleged copying of

9

information from its applications for use on those of ATCC. Defendants assert that this information was not confidential because it constituted "high-level background information that . . . those of ordinary skill in the art already know." Mot. at 16. On the limited record for this motion, the Court is not persuaded. Plaintiff pleads that it did not give permission to Defendants to disclose any information it provided.[2] Defendants' argument, if accepted, would empower an attorney to determine what constitutes secret information and, if the attorney so decided, enable the disclosure of a client's confidences with impunity. Further, even if skilled artisans may have had general knowledge concerning the allegedly copied information, it does not follow that the manner in which Plaintiff presented its invention in its provisional patent application was publicly known. Defendants cite Jack Winter, Inc. v. Koratron Co., 50 F.R.D. 225 (N.D. Cal. 1970), which concerned the scope of the attorney-client privilege but does not require a contrary result. The court concluded that some communications made for the purposes of preparing a patent application are non-privileged because they are intended to be disclosed to PTO. Id. at 228-29. The court did not, however, address an attorney's duty of confidentiality, which is broader than the attorney-client privilege. Dietz v. Meisenheimer & Herron, 177 Cal. App. 4th 771, 786 (2009).

Accordingly, Plaintiff sufficiently pleads that Defendants

---

[2] Although not binding on the Court, the State Bar of California defines a client secret as "any information obtained by the lawyer during the professional relationship, or relating to the representation, which the client has requested to be inviolate or the disclosure of which might be embarrassing or detrimental to the client." State Bar of Cal., Formal Op. No. 1993-133.

10

breached their duties of loyalty and confidentiality.

        2.   Damage

Plaintiff pleads seven forms of damage, which can be grouped into five categories: (1) "reasonable compensation" for unauthorized use of its intellectual property, 1AC ¶ 32(a); (2) decrease in the market value of its business and intellectual property, 1AC ¶ 32(b)-(d); (3) expenditure of resources to mitigate Defendants' damage to its intellectual property, 1AC ¶ 32(e); (4) disgorgement of fees unjustly received by Defendants, 1AC ¶ 32(f); and (5) reimbursement of fees paid to new counsel for services already rendered by Defendants, 1AC ¶ 32(g).  Defendants argue that none of these categories constitutes cognizable damage.

As an initial matter, Defendants contend that Plaintiff must prove that its conduct is the "but for" cause of any damage.  They cite Viner v. Sweet, which states that "a plaintiff in a . . . malpractice action must show that but for the alleged malpractice, it is more likely than not that the plaintiff would have obtained a more favorable result."  30 Cal. 4th 1232, 1244 (2003).  To extend application of this causation standard to Plaintiff's breach of fiduciary duty claim, Defendants cite Lazy Acres Market, Inc. v. Tseng, which states that the causes of action for legal malpractice and breach of fiduciary duty by an attorney are the same.  152 Cal. App. 4th 1431, 1435-36 (2007).  Plaintiff responds that "but for" causation applies only to claims for legal malpractice, not those for a breach of fiduciary duty, and asserts that Lazy Acres discussed "but for" causation in the context of the plaintiffs' legal malpractice claim.  Plaintiff does not, however, cite authority that precludes applying the "but for" causation standard

11

or otherwise require application of another test.  Nor has Plaintiff plead or argued that "concurrent independent causes" led to its injury.[3]  Even if it did, Plaintiff must prove that Defendants' conduct was a "substantial factor" in bringing about the alleged harm.  See Viner, 30 Cal. 4th at 1240.

Plaintiff sufficiently pleads the damage element of its claim.  It avers that Defendants' actions caused the decrease in value of its intellectual property and business, which led it to expend resources to mitigate such harm.  Plaintiff alleges that the loss in value arises from the uncertainty created by ATCC's patent applications, the loss of its "sole inventor" status and the lessening of the "prior art impact" of its intellectual property "on any patents ATCC may obtain."  1AC ¶ 32(b)-(d).  Echoing their arguments concerning ripeness, Defendants assert that Plaintiff's claim of damage based on the risk of ATCC obtaining a patent is too speculative or contingent to suffice as a legal basis for harm.  However, it is not clear, as a matter of law, that Plaintiff could not prove any concrete, current loss of value to its technology or business caused by Defendants' alleged misconduct.  If all

---

[3] "California has definitively adopted the substantial factor test of the Restatement Second of Torts for cause-in-fact determinations."  Rutherford v. Owens-Illinois, Inc., 16 Cal. 4th 953, 968 (1997).  In Viner, the court discussed the relationship between the "but for" and "substantial factor" tests of causation, stating that "the 'substantial factor' test subsumes the traditional 'but for' test of causation."  30 Cal. 4th at 1240.  The court explained that, where "concurrent independent causes" exist, a plaintiff could prove causation by showing that the defendant's action was a "substantial factor" in bringing about the alleged harm.  Id.; see also Rutherford, 16 Cal. 4th at 968.  Concurrent independent causes "are multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm."  Viner, 30 Cal. 4th at 1240.

inferences are taken in favor of Plaintiff, these theories support its claim. Provided Plaintiff can prove this alleged decrease in value caused it harm, its expenditure of resources to prevent additional injury and payment of attorneys' fees to replace Defendants as counsel may constitute additional damage. See Am. Airlines, 96 Cal. App. 4th at 1044 (stating that plaintiff established damage by proving "it spent $8,174 in attorney fees to prevent" harm that could be caused by defendant).

Plaintiff's other theories of damage, however, are not legally cognizable. Plaintiff pleads that it "is entitled to reasonable compensation for the use of its confidential and proprietary information." 1AC ¶ 32(a). However, a request for compensation does not constitute damage for the purposes of Plaintiff's breach of fiduciary duty claim. At most, Plaintiff pleads that it is entitled to damages in the form of "reasonable compensation." However, "damages" typically refers to "the monetary sum that the plaintiff may be awarded as compensation for" an injury, which must be distinguished from the element of "damage," or injury, that is required to state a claim for breach of a fiduciary duty. Lueter v. California, 94 Cal. App. 4th 1285, 1302-03 (2002). Plaintiff points to no authority providing that its request for "reasonable compensation" satisfies the damage element of its claim.

For similar reasons, Plaintiff's allegation that Defendants were "unjustly enriched" and its related request for disgorgement of "all attorney's fees paid by Tethys to the Mintz Levin Defendants related in any way to the Tethys Technology" do not constitute averments of damage. 1AC ¶ 32(f). In Slovensky v.

13

Friedman, the court concluded that a plaintiff's claim for breach of fiduciary duty failed because, although she had sought a remedy for disgorgement of fees, she had not proven damage for which disgorgement was warranted. 142 Cal. App. 4th 1518, 1535-36 (2006). Plaintiff offers no authority requiring a different conclusion. Thus, because it is a remedy and not an injury, Plaintiff's request for disgorgement of attorneys' fees does not satisfy the damage element of its claim.

Accordingly, Plaintiff's theory that it suffered a decrease in the value of its intellectual property satisfies the damage element of its claim. So long as it can prove this damage, the expenditure of resources to prevent additional harm and the payment of fees to hire new counsel can constitute additional injury. However, Plaintiff's claim is dismissed to the extent that it asserts damage based on its requests for "reasonable compensation" and disgorgement; these are requests for remedies, not types of harm.

B. Conversion Claim

Under California law, a claim for conversion requires a plaintiff to allege (1) "ownership or right to possession of property;" (2) a defendant's wrongful act toward the property, causing interference with the plaintiff's possession; and (3) damage to the plaintiff. PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384, 394 (2007). A plaintiff must allege the following to show that a property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." Kremen v. Cohen,

337 F.3d 1024, 1030 (9th Cir. 2003) (quoting G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992)).

In its original complaint, Plaintiff alleged conversion of its patent applications. In its order on Defendants' first motion to dismiss, the Court concluded that Plaintiff did not satisfy the Kremen test because it did not plead a legitimate claim to exclusivity. In addition, Plaintiff failed to provide authority that a patent application could be converted.

Plaintiff now pleads it has the rights of ownership and possession of its patent applications and the intangible intellectual property contained therein. It avers that Defendants interfered with its alleged properties by "(1) copying them without permission . . . , and (2) providing the copied property to a third party . . . ." 1AC ¶ 38. Plaintiff asserts that "the owner of the patent has established his legitimate claim to exclusivity by filing the application with the patent office." Opp'n at 22. This argument is unpersuasive. A patent, not a patent application, grants an individual exclusivity over the invention claimed. See 35 U.S.C. § 154(a). And although Kremen recognized that intangible property could be converted, subsequent California cases addressing the application of the conversion tort to intangible property have suggested that this theory should not be expanded to "displace other, more suitable law." Fremont Indem. Co. v. Fremont Gen. Corp., 148 Cal. App. 4th 97, 124 (2007); see also Silvaco Data Sys. v. Intel Corp., ___ Cal. App. 4th ___, 2010 WL 1713241, at *17 n.21 (2010). For this reason, the Court declines to extend the tort of conversion to encompass claims concerning the copying of patent

15

1  applications, which would implicate federal patent law.  Cf. Meeker
2  v. Meeker, 2004 WL 2554452, at *6 (N.D. Cal.) (declining to extend
3  conversion tort "to reach the intangible intellectual property
4  rights in a trademark").

5  It does not follow, however, that the tort of conversion
6  cannot protect any intangible intellectual property.  Plaintiff
7  cites TeraRecon, Inc. v. Fovia, Inc., in which the Court recognized
8  that, under Kremen, a plaintiff could plead a conversion claim for
9  "computer code, confidential information concerning its customers
10 and potential customers, business plans and other corporate
11 planning documents, and products plans."  2006 WL 1867734, *9 (N.D.
12 Cal.).  However, the conversion claim plead in TeraRecon did not
13 involve the copying of material for which the plaintiff sought
14 patent protection.  The other cases cited by Plaintiff also did not
15 concern the conduct alleged here.  See, e.g., G.S. Rasmussen &
16 Associates, 958 F.2d at 903 (conversion of certificate granted by
17 FAA that conferred rights on plaintiff); Infuturia Global Ltd. v.
18 Sequus Pharmaceuticals, Inc., 2009 WL 440477, at *5 (N.D. Cal.)
19 (conversion of rights granted under contract).

20 Plaintiff does not state a claim of conversion based on its
21 allegations that Defendants copied its patent applications.
22 Accordingly, the Court dismisses Plaintiff's conversion claim with
23 prejudice.

24 III. Motion to Strike Request for Punitive Damages

25 Plaintiff seeks punitive damages based on its claims for
26 breach of fiduciary duty, alleging that Defendants committed
27 oppression and fraud.

28 In California, a plaintiff may seek punitive damages if, in an

16

1  action not arising from a breach of contract, "it is proven by
2  clear and convincing evidence that the defendant has been guilty of
3  oppression, fraud, or malice." Cal. Civ. Code § 3294(a).
4  "Oppression" is defined as "despicable conduct that subjects a
5  person to cruel and unjust hardship in conscious disregard of that
6  person's rights." Id. § 3294(c)(2). "Fraud" is "an intentional
7  misrepresentation, deceit, or concealment of a material fact known
8  to the defendant with the intention on the part of the defendant of
9  thereby depriving a person of property or legal rights or otherwise
10 causing injury." Id. § 3294(c)(3).

11      Defendants do not challenge Plaintiff's request for punitive
12 damages to the extent it rests on oppressive conduct, apparently
13 conceding that Plaintiff's pleadings are sufficient. Thus,
14 Plaintiff may seek punitive damages to the extent that its request
15 is based on Defendants' oppressive conduct.

16      Defendants argue that Plaintiff has not plead fraud in
17 accordance with Rule 9(b). In particular, they complain that
18 Plaintiff has not plead the "times, dates, places or other details"
19 of their alleged fraudulent activity. Reply at 15. However,
20 Plaintiff appears to seek punitive damages for its breach of
21 fiduciary duty claim based on a failure to disclose material facts.
22 In cases involving non-disclosures, a modified pleading standard
23 applies "on account of the reduced ability in an omission suit 'to
24 specify the time, place, and specific content' relative to a claim
25 involving affirmative misrepresentations." In re Apple & AT & TM
26 Antitrust Litig., 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008)
27 (quoting Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1099
28 (N.D. Cal. 2007)). Plaintiff's failure to plead the time, date and

17

place of Defendants' alleged non-disclosures does not defeat its request for punitive damages.  Plaintiff pleads specific facts it considers material, about which Defendants knew but failed to disclose.  Plaintiff also avers scienter and intent generally, as allowed under Rule 9(b).  Thus, Plaintiff may seek punitive damages based on fraud.

Accordingly, Defendants' motion to strike Plaintiff's request for punitive damages is denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part Defendants' Motion to Dismiss and DENIES it in part.  (Docket No. 22.)  Plaintiff's claim for conversion is dismissed with prejudice.  Defendants' Motion to Strike is DENIED.  A case management conference is scheduled for June 22, 2010 at 2:00 p.m.

IT IS SO ORDERED.

Dated: June 4, 2010

CLAUDIA WILKEN
United States District Judge